CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 22 2015

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VALARIE LAMONACA, ) | |
| ) | Civil Action No. 7:14CV00249 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | Hon. Glen E. Conrad |
| TREAD CORPORATION, ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

Valarie LaMonaca filed this action against her former employer, Tread Corporation (Tread), alleging violations of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654. The case is presently before the court on Tread's motion for summary judgment. The court held a hearing on the motion on June 17, 2015. For the reasons stated during the hearing and for those set forth below, the motion for summary judgment will be denied.

## Factual Background

The following facts are either undisputed or, where disputed, are presented in the light most favorable to the plaintiff. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (emphasizing that courts must view the evidence on summary judgment in the light most favorable to the nonmoving party).

LaMonaca began working for Tread in 2009. After initially serving as an executive assistant to Tread's former chief executive officer (CEO), Bill McClane, LaMonaca was appointed to serve as the interim human resources (HR) director on August 26, 2012. On March 10, 2013, the current CEO, Barry Russell, officially promoted LaMonaca to HR director. She remained in that position until April of 2014, when the events giving rise to this action occurred.

In April of 2014, LaMonaca struggled emotionally after being exposed to heightened levels of stress at home and at work. Her husband had lost his job while recuperating from open heart surgery and, thus, her job was the family's sole source of income and insurance benefits. Additionally, LaMonaca's relationship with Russell had grown increasingly strained. One source of tension between them was a lawsuit Tread had filed in state court against LaMonaca's former boss, Bill McClane, and the company's former chief financial officer, Carl Miller.

On the afternoon of Friday, April 11, 2014, LaMonaca met with Russell to discuss issues related to the lawsuit against McClane and Miller. The parties dispute what transpired during the meeting. While Tread maintains that LaMonaca resigned during the meeting, LaMonaca contends that she merely informed Russell that she was considering resigning, and that he suggested that she take some time to think about the decision. During her deposition, LaMonaca testified that Russell told her that she seemed "stressed out," that "he did not think that [she] should resign," and that he would want her to submit a written resignation if she ultimately decided to do so. LaMonaca Dep. Tr. 72-73.

LaMonaca returned to her office after the meeting. Approximately twenty minutes later, Russell recommended that she leave early, because he was concerned about her "state of mind." Russell Dep. Tr. 60-61. LaMonaca was observed crying when she passed Kimberly Butler, the HR assistant, on the way out of the building.

Later that night, Russell sent LaMonaca two text messages asking if she planned to submit a written resignation. LaMonaca did not respond to the messages that night.

On the morning of Saturday, April 12, 2014, LaMonaca scheduled an appointment to see her physician, Dr. Nina Sweeney, the following Monday, April 14, 2014. After scheduling the appointment, LaMonaca sent Butler an email indicating that she was "suffering from

2

psychological distress due to prolonged exposure to high levels of stress," and that she had scheduled to see her physician on Monday afternoon. Def.'s Ex. P. LaMonaca asked Butler to send her the company's FMLA forms to take with her to the appointment.

On Sunday, April 13, 2014 at 12:47 p.m., Russell sent LaMonaca another series of text messages which provided as follows:

> Valarie – your failure to respond to my last two questions indicates that you have decided to discontinue your employment at Tread immediately. If this is incorrect, please respond immediately. Otherwise, I will assume the resignation you verbally tendered on Friday is effective immediately and I will arrange on Monday to discontinue your pay and benefits.

Def.'s Ex. Q.

LaMonaca responded an hour later as follows:

> Barry, I do not think that this is an appropriate medium to have this conversation. I was preparing to discuss with you on Monday. However, since you demand my immediate response, no I do not plan to tender my resignation. I will send a longer explanation in email.

Id.

At 2:01 p.m. that afternoon, LaMonaca sent Russell an email reiterating that she had decided not to resign from Tread. In the same email, LaMonaca advised Russell that she was requesting a medical leave of absence, and that she had scheduled an appointment with her physician:

> . . . As you recognized, even before me, I am suffering from the adverse effects of prolonged exposure to stress. On Friday, you stated that perhaps the very difficult raise process has substantially increased my stress level. A little bit of distance from the situation has given me more perspective and I recognize that I have become increasingly emotionally distressed at work. Both you and my coworkers have observed this on multiple recent occasions demonstrated by my inability to maintain my composure during stressful situations, crying at work, and inability to articulate myself clearly. I believe that this is the result of prolonged exposure to high levels of stress and I am seeking medical treatment for this condition. I have an appointment with my physician on Monday, April 14, 2014 and I will let you know the outcome of the appointment on Tuesday.

3

> In the meantime, I am requesting that Kim [Butler] send me the appropriate FMLA and Short Term Disability paperwork in time for me to take to my appointment on Monday afternoon.

Def.'s Ex. R. In a reply email sent twenty minutes later, Russell directed LaMonaca to "stay away from the office and off of Tread property until further notice." Id.

On the morning of Monday, April 14, 2014, Butler relayed to Russell LaMonaca's request for FMLA forms. Neither Russell nor Butler forwarded the forms to LaMonaca.

At 3:30 p.m. that afternoon, LaMonaca was examined by Dr. Sweeney, a board certified family practitioner. Dr. Sweeney diagnosed LaMonaca as having an adjustment disorder with anxious mood. She advised LaMonaca to take a 30-day medical leave of absence and scheduled a follow-up evaluation for May 12, 2014.

LaMonaca claims that she was terminated by email later that day. At 5:35 p.m., Russell sent LaMonaca an email advising her that her employment had ended the previous Friday, and that he had instructed Butler to send her information regarding her accrued leave and COBRA benefits.

On April 22, 2014, LaMonaca sent Russell a copy of the work excuse that she had received from Dr. Sweeney and asked that he reconsider the decision to terminate her employment. In response, Russell advised LaMonaca that her employment ended on April 11, 2014 when he "accepted [her] resignation," and, thus, that there was no need for her physician to complete any FMLA paperwork. Def.'s Ex. II.

### **Procedural History**

LaMonaca filed the instant action against Tread on May 15, 2014. LaMonaca claims that Tread interfered with her rights under the FMLA by terminating her instead of giving her medical leave, and that Tread terminated her in retaliation for requesting FMLA leave.

On May 22, 2015, Tread moved for summary judgment. The court held a hearing on the motion on June 17, 2015. The motion has been fully briefed and is ripe for review.

### Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. Tolan, 134 S. Ct. at 1866. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015) (internal citation and quotation marks omitted). "The court therefore cannot weigh the evidence or make credibility determinations." Id.

### Discussion

#### I. Interference Claim

The FMLA confers several rights on eligible employees, including the right to take up to twelve weeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions" of her position. 29 U.S.C. § 2612(a)(1)(D). The FMLA also makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). To prevail on a claim of

5

unlawful interference, an employee must prove (1) that she was entitled to an FMLA benefit; (2) that her employer interfered with the provision of that benefit; and (3) that the interference caused harm. See Downs v. Winchester Med. Ctr., 21 F. Supp. 3d 615, 617 (W.D. Va. 2014); see also Adams v. Anne Arundel Cnty. Pub. Sch., No. 14-1608, 2015 U.S. App. LEXIS 10031, at *7 (4th Cir. June 15, 2015).

In moving for summary judgment on LaMonaca's claim that Tread interfered with her right to FMLA leave, Tread contends that LaMonaca's claim fails at the first element. Specifically, Tread argues that LaMonaca was not entitled to FMLA leave because (1) she resigned before requesting leave; (2) she did not provide sufficient notice of her need for FMLA leave; and (3) she did not have a serious health condition that prevented her from performing the essential functions of her job. The court will consider each argument in turn.

Tread first argues that LaMonaca voluntarily resigned from her job during the meeting with Russell on April 11, 2014, and, thus, that she was no longer employed at the time she requested FMLA leave. For the reasons stated during the summary judgment hearing, however, the court remains convinced that whether LaMonaca resigned during the meeting with Russell on April 11, 2014 is a question of fact that must be resolved by a jury. While Tread has proffered evidence from which a jury could discredit LaMonaca's version of the events, the court is not permitted to weigh the evidence or make credibility determinations on summary judgment. Jacobs, 780 F.3d at 568; see also Gray v. Spillman, 925 F.2d 90, 96 (4th Cir. 1991) ("It is not our job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe. Those tasks are for the jury.").

Tread next argues that LaMonaca's request for FMLA leave was insufficient. To invoke rights under the FMLA, an employee is required to provide notice to her employer of her need for

6

leave. Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 382 (4th Cir. 2001). When the need for leave is unforeseeable, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case."* 29 C.F.R. § 825.303(a). "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). Rather, the employee must merely provide "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." Id. (emphasis added). As courts have previously noted, "this is not a formalistic or stringent standard," and employees need not "provide every detail necessary for the employer to verify if the FMLA applies." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 303 (3d Cir. 2012) (citing cases).

Once the employee informs the employer that she needs leave for a medical reason, "the burden then shifts to the employer to gather additional information and determine if the FMLA is actually implicated." Krenske v. Alexandria Motor Cars, Inc., 289 F. App'x 629, 632 (4th Cir. 2008). "If the employer finds the employee's request for leave vague or insufficient, the employer should ask the employee to provide the necessary details through additional documentation and information." Id.; see also 29 C.F.R. § 825.303(b) ("The employer will be expected to obtain any additional required information through informal means."). Consequently, "the 'critical test' is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'" Lichtenstein, 691 F.3d at 303 (quoting Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007)). The resolution of this question is generally a question of fact

---

* The FMLA regulations treat foreseeable and unforeseeable leave differently. In this case, there is no suggestion from either party that LaMonaca's need for leave was foreseeable.

7

for the jury. Id.; see also Rynders v. Williams, 650 F.3d 1188, 1196 (8th Cir. 2011) ("Our cases instruct that the adequacy of an employee's notice requires consideration of the totality of the circumstances and is typically a jury question.").

Viewing the evidence in a light most favorable to LaMonaca, the court believes that a genuine issue of material fact exists as to whether Tread received sufficient notice of her need for leave. In a succession of email communications beginning on April 12, 2014, LaMonaca notified Butler and Russell that she was suffering from the adverse effects of prolonged exposure to stress and that she may need to take a medical leave of absence. LaMonaca told Butler and Russell that she had scheduled to see her physician on the afternoon of April 14, 2014, and requested that the company provide her with the appropriate FMLA forms. In her email to Russell on April 14, 2014, LaMonaca specifically requested "a medical leave of absence from Tread." Def.'s Ex. R. In support of her request, LaMonaca provided specific examples of her emotional instability at work:

> . . . I have become increasingly emotionally distressed at work. Both you and my coworkers have observed this on multiple recent occasions demonstrated by my inability to maintain my composure during stressful situations, crying at work, and inability to articulate myself clearly. I believe that this is the result of prolonged exposure to high levels of stress and I am seeking medical treatment for this condition.

Id.

Despite Tread's arguments to the contrary, the mere fact that LaMonaca had not yet received medical treatment at the time she requested leave is not fatal to her claims, nor is the fact that the emails provided no indication of how long the requested absence would be. Courts have made clear that "[t]here is no requirement in the statute that an employee be diagnosed with a serious health condition before becoming eligible for FMLA leave," Stekloff v. St. John's Mercy Health Sys., 218 F.3d 858, 863 (8th Cir. 2000), and that "employees may provide

8

FMLA-qualifying notice before knowing the exact dates or duration of the leave they will take." Sarnowski, 510 F.3d at 402; see also Clinkscale v. St. Therese of New Hope, 701 F.3d 825, 829 (8th Cir. 2012) ("St. Theresa makes much of the fact that Clinkscale had . . . not previously been diagnosed with an anxiety disorder . . . . While this argument may ultimately bear on a factfinder's consideration of the notice requirement, it raises considerable policy concerns. Namely, the FMLA cannot reasonably be read to provide relief only for veteran claimants whose employers may anticipate the need for medical leave. The Act itself contemplates circumstances in which the need for qualifying leave arises unexpectedly. Thus, to assume an employee's previously clear medical history precludes a subsequent FMLA claim when her need for medical leave arises unexpectedly is patently unreasonable and contrary to the purpose of the Act.").

Likewise, the court finds unpersuasive Tread's reliance on the fact that it did not receive the doctor's note excusing LaMonaca from work until April 22, 2014, eight days after her employment with Tread ended. As explained above, a reasonable jury could find that LaMonaca's emails to Butler and Russell provided sufficient information to require the employer to inquire further into the basis for her leave request, and that Russell immediately terminated her employment before she had a reasonable opportunity to provide additional documentation from her physician. In such circumstances, an employer bears the risk that an employee's entitlement to FMLA leave will later be established, and cannot avoid liability by preemptively terminating the employee. See Clinkscale, 701 F.3d at 828 ("[A]n employer does not avoid liability by discharging an employee who takes leave in order to seek treatment for a condition that is later held to be covered by the FMLA. The employer who precipitously fires an employee, when the latter claims the benefits of leave under the FMLA, bears the risk that the health condition in question later develops into a serious health condition.") (internal citation omitted); see also

9

Dotson v. Pfizer, 558 F.3d 284, 295 (4th Cir. 2009) ("There is no question that Dotson gave Pfizer adequate notice of his need for leave during the adoption process. After he provided this information, the burden shifted to Pfizer to determine whether he was requesting FMLA leave . . . . Pfizer's legal argument would allow it to use its own failure to determine whether leave should be designated as FMLA-protected to block liability for retaliation. We decline to allow an employer to take advantage of its own lapse in such a way.").

In addition to arguing that LaMonaca resigned before requesting leave and that her request for leave was insufficient, Tread contends that LaMonaca was not eligible for FMLA leave because she did not suffer from a "serious health condition" that rendered her "unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). The FMLA's definition of "serious health condition" includes a "mental condition that involves . . . continuing treatment by a health care provider. 29 U.S.C. § 2611(11)(B). This term is described in further detail in the FMLA regulations, which provide that "a serious health condition involving continuing treatment by a health care provider" includes, among other things, "[a] period of incapacity of more than three consecutive full calendar days . . . that also involves . . . treatment two or more times by a health care provider." 29 C.F.R. § 825.115. The term "incapacity" is defined to include the "inability to work . . . due to the serious health condition." 29 C.F.R. § 825.113. "The term 'treatment' includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." Id.

In this case, Tread does not dispute that LaMonaca was diagnosed with a mental health condition by Dr. Sweeney, or that LaMonaca was examined at least twice in the course of evaluating and/or treating the condition. Instead, Tread contends that LaMonaca has failed to establish that she was unable to work for more than three consecutive days as a result of the

10

condition. At this stage of the proceedings, however, the court concludes that LaMonaca has presented sufficient evidence to create a genuine dispute on this issue. Upon examining LaMonaca on April 14, 2014, Dr. Sweeney advised her to take a medical leave of absence from Tread until May 13, 2014. During her deposition, Dr. Sweeney testified that LaMonaca was tearful, shaky, and unusually agitated during the examination, and that she was of the opinion that LaMonaca's anxiety was so severe that LaMonaca was unable to perform her job. See 29 C.F.R. § 825.123(a) ("An employee is unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position . . . ."). To the extent Tread seeks to discredit Dr. Sweeney's testimony by arguing that Dr. Sweeney "simply relied on [LaMonaca's] self-serving assertion that she was unable to perform her job," the court concludes that such arguments are better suited for trial than summary judgment. See Jacobs, 780 F.3d at 568; see also Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004) (emphasizing that the court "may not make credibility determinations" in reviewing the record on summary judgment).

Additionally, the court notes that the mere fact that LaMonaca applied for other jobs during the period of leave prescribed by Dr. Sweeney does not preclude her from establishing that she was incapacitated for purposes of 29 C.F.R. § 825.115, or that she was "unable to perform the functions of [her] position," as required by 29 U.S.C. § 2612(a)(1)(D). As other courts have previously explained, "a demonstration than an employee is unable to work in his or her current job due to a serious health condition is enough to show that the employee is incapacitated, even if that job is the only one that the employee is unable to perform." Stekloff, 218 F.3d at 861. Likewise, "the inquiry into whether an employer is able to perform the essential functions of her job should focus on her ability to perform those functions in her current environment." Id. at 862. Accordingly,

11

an employee's leave is protected by the FMLA "even if she was continuously able to work . . . for some other employer." Id.; see also Hurlbert St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1296 (11th Cir. 2006) (rejecting the employer's claim that, as a matter of law, an employee could not have experienced an inability to work within the meaning of the FMLA regulations since he continued to perform similar duties for another employer); Elliott v. Rollins, No. 5:11-CV-693-FL, 2013 U.S. Dist. LEXIS 140926, at *28 (E.D.N.C. Sept. 13, 2013) ("The fact that Plaintiff could perform some other job while pregnant is not relevant.").

Viewing the record in the light most favorable to LaMonaca, including the testimony of Dr. Sweeney, the court finds that a genuine dispute of material fact exists as to whether LaMonaca suffered from a serious medical condition that precluded her from performing the essential functions of her position. Accordingly, Tread's motion for summary judgment on LaMonaca's interference claim will be denied.

## II. Retaliation Claim

LaMonaca also claims that Tread terminated her in retaliation for requesting FMLA leave. See 29 U.S.C. § 2615(a); see also 29 C.F.R. § 825.220(c) ("The [FMLA's] prohibition against interference prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights.").

"FMLA retaliation claims are analogous to discrimination claims brought under Title VII." Laing v. Fed. Express Corp., 703 F.3d 713, 717 (4th Cir. 2013). Accordingly, retaliation claims based on circumstantial evidence are evaluated under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See id. Under this framework, the plaintiff "must first make a prima facie showing that [she] engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to

12

Case 7:14-cv-00249-GEC   Document 71   Filed 06/22/15   Page 12 of 14   Pageid#: 1095

the plaintiff's protected activity." Yashenko v. Harrah's N.C. Casino Co., 446 F.3d 541, 551 (4th Cir. 2006) (internal citation and quotation marks omitted). If the plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation, and the employer offers a non-retaliatory reason for the adverse action, the plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." Id. (internal citation and quotation marks omitted).

At this stage of the proceedings, the court is of the opinion that LaMonaca has proffered sufficient evidence to establish that she engaged in protected activity by requesting FMLA leave; that Tread subsequently terminated her employment; and that there was a causal connection between the leave request and the adverse employment action. See Wright v. Southwest Airlines, 319 F. App'x 232, 233 (4th Cir. 2009) (noting that the first two elements of the prima facie case were clearly established where an employee "requested . . . leave under the FMLA and her employment was terminated"); see also Foster v. Univ. of Maryland-Eastern Shore, No. 14-1073, 2015 U.S. App. LEXIS 8384, at *20-21 (4th Cir. May 21, 2015) (holding that the causation element was supported by the temporal proximity between the plaintiff's protected activity and her termination).

While Tread continues to maintain that LaMonaca voluntarily resigned and, thus, that she did not suffer an adverse employment action, the court remains convinced that whether LaMonaca's employment ended voluntarily or involuntarily must be decided by a jury. Likewise, the record as a whole, when taken in the light most favorable to LaMonaca, presents a question of fact regarding whether Tread's asserted belief that LaMonaca voluntarily resigned was pretext for retaliation. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted

13

justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); see also Burton v. Teleflex Inc., 707 F.3d 417, 430 (3d Cir. 2013) (holding that the plaintiff's evidence created a genuine dispute of fact regarding the credibility of the employer's proffered reason for her discharge, and that "a reasonable fact finder could find the [employer's] claim that [the plaintiff] resigned to be unworthy of credence") (internal citation and quotation marks omitted); Carstetter v. Adams County Transit Auth., No. 1:06-CV-1993, 2008 U.S. Dist. LEXIS 51874, at *30 (M.D. Pa. July 8, 2008) ("When Wise informed Carstetter that she interpreted his action as a resignation, he immediately acted to correct the misunderstanding, but Wise maintained that he had voluntarily ended his employment. Hence, a jury could conclude that Wise's asserted belief that Carstetter had voluntarily resigned was a pretext for FMLA retaliation."). Accordingly, Tread is not entitled to summary judgment on LaMonaca's retaliation claim.

## Conclusion

For the reasons stated, the court will deny Tread's motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 22d day of June, 2015.

_____
Chief United States District Judge