CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 21 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

VALARIE LAMONACA,               )
                                )       Civil Action No. 7:14CV00249
            Plaintiff,          )
                                )       **MEMORANDUM OPINION**
v.                              )
                                )       Hon. Glen E. Conrad
TREAD CORPORATION,              )       Chief United States District Judge
                                )
            Defendant.          )

On July 7, 2015, a jury found in favor of Valarie LaMonaca on her claims of interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA") against her former employer, Tread Corporation ("Tread"). The case is now before the court on Tread's motion for judgment as a matter of law or, in the alternative, a new trial; LaMonaca's motion for liquidated damages; and LaMonaca's motion for attorneys' fees and litigation costs. The court held a hearing on the motions on December 7, 2015. For the reasons stated during the hearing and for those set forth below, Tread's motion will be denied, LaMonaca's motion for liquidated damages will be granted, and LaMonaca's motion for attorneys' fees and costs will be granted in part and denied in part.

## Factual Background

LaMonaca began working for Tread in 2009. She was promoted to human resources (HR) director on March 10, 2013. LaMonaca remained in that position until April of 2014, when the events giving rise to this action occurred.

In April of 2014, LaMonaca struggled emotionally after being exposed to heightened levels of stress at home and at work. Her husband had lost his job while recuperating from open heart surgery. Additionally, LaMonaca's relationship with Barry Russell, Tread's chief

executive officer, had grown increasingly strained. One source of tension between them was a lawsuit Tread had filed in state court against two former members of its executive leadership team.

On the afternoon of Friday, April 11, 2014, LaMonaca met with Russell to discuss issues related to the lawsuit. The parties dispute what transpired during the meeting. While Tread maintains that LaMonaca resigned during the meeting, LaMonaca contends that she merely informed Russell that she was considering resigning, and that he suggested that she take some time to think about the decision. At trial, LaMonaca testified that Russell told her that he believed that a recent raise process for company employees had "substantially raised [her] stress level," that he "didn't want [her] to resign," and that she would "need[] to submit [her] resignation in writing" if she ultimately decided to do so. Trial Tr. Vol. I at 139-40.

LaMonaca returned to her office after the meeting. Approximately twenty minutes later, Russell recommended that she leave the office early, because he was concerned about her "odd behavior" and her state of mind. Trial Tr. Vol. II at 93-95. LaMonaca was visibly upset when she passed Kimberly Butler, the HR assistant, on the way out of the building. About an hour later, Butler called LaMonaca. LaMonaca testified that she told Butler that she was considering resigning. Trial Tr. Vol. I at 146.

Later that night, Russell sent LaMonaca two test messages asking if she planned to submit a written resignation. LaMonaca did not respond to the messages that night.

On Saturday, April 12, 2014, LaMonaca scheduled an appointment the following Monday with her physician, Dr. Nina Sweeney. After scheduling the appointment, LaMonaca sent Butler an email indicating that she was "suffering from psychological distress due to prolonged exposure to high levels of stress," and that she had scheduled to see her physician on Monday afternoon.

2

Pl.'s Trial Ex. 8.  LaMonaca asked Butler to send her the company's FMLA forms to take with

her to the appointment.

On Sunday, April 13, 2014 at 12:47 p.m., Russell sent LaMonaca another series of text

messages which provided as follows:

> Valarie -- your failure to respond to my last two questions indicates that you have
> decided to discontinue your employment at Tread immediately.  If this is
> incorrect, please respond immediately.  Otherwise, I will assume the resignation
> you verbally tendered on Friday is effective immediately and I will arrange on
> Monday to discontinue your pay and benefits.

Pl.'s Trial Ex. 7.

> LaMonaca responded an hour later as follows:

> Barry, I do not think that this is an appropriate medium to have this conversation.  I
> was preparing to discuss with you on Monday.  However, since you demand my
> immediate response, no I do not plan to tender my resignation.  I will send a longer
> explanation in email.

Id.

At 2:01 p.m. that afternoon, LaMonaca sent Russell an email reiterating that she had

decided not to resign from Tread.  In the same email, LaMonaca advised Russell that she was

requesting a medical leave of absence, and that she had scheduled an appointment with her

physician:

> . . . As you recognized, even before me, I am suffering from the adverse effects of
> prolonged exposure to stress.  On Friday, you stated that perhaps the very difficult
> raise process has substantially increased my stress level.  A little bit of distance
> from the situation has given me more perspective and I recognize that I have
> become increasingly emotionally distressed at work.  Both you and my coworkers
> have observed this on multiple recent occasions demonstrated by my inability to
> maintain my composure during stressful situations, crying at work, and inability to
> articulate myself clearly.  I believe that this is the result of prolonged exposure to
> high levels of stress and I am seeking medical treatment for this condition.  I have
> an appointment with my physician on Monday, April 14, 2014 and I will let you
> know the outcome of the appointment on Tuesday.

In the meantime, I am requesting that Kim [Butler] send me the appropriate FMLA and Short Term Disability paperwork in time for me to take to my appointment on Monday afternoon.

Def.'s Trial Ex. 15. In a reply email sent twenty minutes later, Russell directed LaMonaca to "stay away from the office and off of Tread property until further notice." Id.

At 3:30 p.m. on Monday, April 14, 2014, LaMonaca was examined by Dr. Sweeney, a board certified family practitioner. Dr. Sweeney diagnosed LaMonaca as suffering from an adjustment disorder with anxious features. Trial Tr. Vol. I at 102. She advised LaMonaca to take a 30-day medical leave of absence and scheduled a follow-up evaluation for May 12, 2014.

LaMonaca contends that she was terminated by email later that day. At 5:35 p.m., Russell sent LaMonaca an email advising her that her employment had ended the previous Friday, and that he had instructed Butler to send her information regarding her accrued leave and COBRA benefits. Pl.'s Trial Ex. 12. A few hours later, Butler called LaMonaca. LaMonaca told Butler that Dr. Sweeney had prescribed a 30-day leave of absence. Trial Tr. Vol. I at 164-65; Trial Tr. Vol. II at 163-64.

LaMonaca testified that she had hoped that Russell would reconsider his termination decision and reinstate her. Trial Tr. Vol. I at 165-66. On April 22, 2014, LaMonaca sent Russell a copy of the work excuse that she had received from Dr. Sweeney and asked that he reconsider the decision to terminate her employment. Pl.'s Trial Ex. 13. In response, Russell advised LaMonaca that her employment ended on April 11, 2014, and that there was no need for her to complete any FMLA paperwork.

**Procedural History**

LaMonaca filed the instant action against Tread on May 15, 2014, alleging violations of the FMLA. Specifically, LaMonaca claimed that Tread interfered with her rights under the FMLA,

4

and that Tread terminated her in retaliation for exercising, or attempting to exercise, her FMLA rights.

The court denied Tread's motion for summary judgment. On July 6-7, 2015, a bifurcated jury trial was conducted on LaMonaca's claims of interference and retaliation. At the close of LaMonaca's evidence and again before the case was submitted to the jury, Tread moved for judgment as a matter of law. The court denied Tread's motions, and the jury returned a verdict in favor of LaMonaca on both claims. After the jury returned its verdict, LaMonaca and Tread agreed to forego the damages phase of the trial. Instead, the parties stipulated to a back pay award of $54,468.89, including pre-judgment interest, and submitted the issues of liquidated damages, attorneys' fees, and costs to the court for decision. See Docket No. 86.

The case is now before the court on Tread's motion for judgment as a matter of law or, in the alternative, for a new trial; LaMonaca's motion for liquidated damages; and LaMonaca's motion for attorneys' fees and costs. The court held a hearing on the motions on December 7, 2015. The motions have been fully briefed and are ripe for review.

## Discussion

### I. Tread's Motion for Judgment as a Matter of Law

Tread has moved for judgment as a matter of law on both of LaMonaca's FMLA claims. Rule 50(b) of the Federal Rules of Civil Procedure permits a party to renew its motion for judgment as a matter of law following the jury's verdict. The court may grant such motion only if it finds that "a reasonable jury would not have had a legally sufficient evidentiary basis to find for the [non-moving] party on [a particular] issue." Fed. R. Civ. P. 50(a)(1). The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Lack v. Wal-Mart Stores, Inc., 240 F.3d 255, 259 (4th Cir. 2001). It cannot substitute its

judgment for that of the jury by reweighing the evidence or making credibility determinations. Price v. City of Charlotte, 93 F.3d 1241, 1250 (4th Cir. 1996). The court should "accord utmost respect to jury verdicts and tread gingerly in reviewing them." Id. Thus, when a jury has deliberated and returned a verdict in favor of the non-movant,

> a court may set aside the verdict only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it.

Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (internal citation and quotation marks omitted).

### A.     Interference Claim

The FMLA confers several rights on eligible employees, including the right to take up to twelve weeks of leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions" of her position. 29 U.S.C. § 2612(a)(1)(D). The FMLA also makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). To prevail on a claim of unlawful interference, an employee must prove (1) that she was entitled to an FMLA benefit; (2) that her employer interfered with the provision of that benefit; and (3) that the interference caused harm. Adams v. Anne Arundel Cnty. Pub. Sch., 798 F.3d 422, 427 (4th Cir. 2015).

In moving for judgment as a matter of law on LaMonaca's claim that Tread interfered with her right to FMLA leave, Tread contends that LaMonaca failed to establish the first element. Specifically, Tread argues that no reasonable jury could have found that LaMonaca was entitled to FMLA leave, because (1) she resigned before requesting leave; (2) she did not provide sufficient notice of her need for FMLA leave; and (3) she did not have a serious health condition that

prevented her from performing the essential functions of her job. The court will address each argument in turn.

Tread first argues that the record demonstrates that LaMonaca resigned during the meeting with Russell on April 11, 2014 and, thus, that she was no longer employed at the time she requested FMLA leave. The jury ultimately rejected this argument and found that LaMonaca did not resign during the April 11, 2014 meeting. For the reasons stated during the hearing, the court remains convinced that there was a sufficient evidentiary basis for the jury's finding in this regard. Based on the evidence presented, including the subsequent text messages sent by Russell and LaMonaca, the jury was free to credit LaMonaca's testimony regarding what transpired during the meeting. While the court may have given more weight to Russell's testimony if had been the finder of fact, the court cannot say that the evidence was so overwhelming that no reasonable jury could have found against Tread on the issue of whether LaMonaca voluntarily resigned before she requested FMLA leave. See Cash, 654 F.3d at 333.

Tread next argues that LaMonaca's request for FMLA leave was insufficient. When the need for FMLA leave is unforeseeable, "an employee must provide notice to the employer as soon as practicable under the fact and circumstances of the particular case." 29 C.F.R. § 825.303(a). "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). Instead, the employee must merely provide "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." Id. As other courts have previously observed, "this is not a formalistic or stringent standard," and employees need not "provide every detail necessary for the employer to verify if the FMLA applies." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 303 (3d Cir. 2012) (citing cases).

7

Once the employee informs the employer that she needs leave for a medical reason, "the burden then shifts to the employer to gather additional information and determine if the FMLA is actually implicated." Krenzke v. Alexandria Motor Cars, Inc., 289 F. App'x 629, 632 (4th Cir. 2008). "If the employer finds the employee's request for leave vague or insufficient, the employer should ask the employee to provide the necessary details through additional documentation and information." Id.; see also 29 C.F.R. § 825.303(b). Consequently, "the 'critical test' is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'" Lichtenstein, 691 F.3d at 303 (quoting Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007)). The resolution of this issue is a question of fact for the jury. Id.; see also Rynders v. Williams, 650 F.3d 1188, 1196 (8th Cir. 2011) ("Our cases instruct that the adequacy of an employee's notice requires consideration of the totality of the circumstances and is typically a jury question.") (citation omitted).

In this case, the jury found that LaMonaca provided adequate notice of her need for FMLA leave. Based on the evidence presented, the court is convinced that there was a legally sufficient evidentiary basis for the jury's finding in this regard. In a succession of email communications beginning on April 12, 2014, LaMonaca notified Russell and Butler that she was suffering from the adverse effects of prolonged exposure to stress, and that she may need to take a medical leave of absence. She further advised them that she had made an appointment with her physician, and requested that the company provide her with the appropriate FMLA paperwork. In support of her request, LaMonaca provided specific examples of her emotional instability at work.

Despite Tread's arguments to the contrary, the mere fact that LaMonaca had not yet received medical treatment at the time she requested leave is not fatal to LaMonaca's claims, nor is

the fact that the emails provided no indication of how long the requested absence would be. As was previously noted in denying Tread's summary judgment motion, courts have made clear that "[t]here is no requirement in the statute that an employee be diagnosed with a serious health condition before becoming eligible for FMLA leave," Stekloff v. St. John's Mercy Health Sys., 218 F.3d 858, 863 (8th Cir. 2000), and that "employees may provide FMLA-qualifying notice before knowing the exact dates or duration of the leave they will take." Sarnowski, 510 F.3d at 402; see also Clinkscale v. St. Therese of New Hope, 701 F.3d 825, 829 (8th Cir. 2012) (holding that the plaintiff's interference claim under the FMLA did not fail as a matter of law merely because the plaintiff "had never before suffered a panic attack to [the employer's] knowledge and had not previously been diagnosed with an anxiety disorder").

Likewise, the fact that Tread did not receive the doctor's note excusing LaMonaca from work until April 22, 2014 is not dispositive. A reasonable jury could have found that LaMonaca's emails to Russell and Butler provided sufficient information to require Tread to inquire further into the basis for LaMonaca's leave request, and that Russell immediately terminated her employment before she had an adequate opportunity to provide additional documentation from Dr. Sweeney. It is well-settled that an employer cannot avoid its FMLA obligations by preemptively firing an employee after receiving notice of her intent to seek leave under the Act. See Clinkscale, 701 F.3d at 828 ("[A]n employer does not avoid liability by discharging an employee who takes leave in order to seek treatment for a condition that is later held to be covered by the FMLA. The employer who precipitously fires an employee, when the latter claims the benefits of leave under the FMLA, bears the risk that the health condition in question later develops into a serious health condition.") (citation omitted); see also Phillips v. Mathews, 547 F.3d 905, 910 (8th Cir. 2008) (noting that it was "immaterial" that the plaintiff was terminated before she submitted her FMLA

9

paperwork and emphasizing that the employer could "not escape liability by simply terminating her before she could inform them of the results of her appointment"). Instead, such conduct "may constitute interference with an employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).

In addition to arguing that LaMonaca resigned before requesting leave and that her request for leave was insufficient, Tread contends that LaMonaca was not eligible for FMLA leave because she did not suffer from a "serious health condition" that rendered her "unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). The FMLA's definition of "serious health condition" includes a "mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). The term is described in further detail in the FMLA regulations, which provide that "a serious health condition involving continuing treatment by a health care provider" includes, among other things, "[a] period of incapacity of more than three consecutive full calendar days . . . that also involves . . . treatment two or more times by a health care provider." 29 C.F.R. § 825.115. The term "incapacity" is defined to include the "inability to work . . . due to the serious health condition." 29 C.F.R. § 825.113. "The term 'treatment' includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition." Id.

Here, Tread does not dispute that LaMonaca was diagnosed with a mental health condition by Dr. Sweeney, or that LaMonaca was examined at least twice in the course of evaluating and/or treating the condition. Instead, Tread contends, as it did on summary judgment, that LaMonaca failed to establish that she was unable to work for more than three consecutive days as a result of the condition. Based on Dr. Sweeney's testimony, however, the court concludes that there was a legally sufficient evidentiary basis to support the jury's finding on this issue. Dr. Sweeney treated

10

LaMonaca for more than seven years before examining her on April 14, 2014. The physician testified that she had never seen LaMonaca in such an agitated and nervous state during any prior office visit. Dr. Sweeney described LaMonaca as being "very distraught," "tearful," and "shaky," and recalled that LaMonaca "had a hard time getting out what she wanted to say because she was so upset." Trial Tr. Vol. I at 101. Dr. Sweeney diagnosed LaMonaca as suffering from an acute anxiety disorder and advised her to take a 30-day medical leave of absence from her job. Id. at 107. When specifically asked if it was more likely than not that LaMonaca was unable to work for more than three days, Dr. Sweeney testified in the affirmative. Id.

To the extent Tread seeks to discredit Dr. Sweeney's testimony by arguing that the physician was never informed of all of the essential functions of LaMonaca's position, the court is unpersuaded. An employee is deemed unable to perform the functions of her position if she is "unable to perform any one of the essential functions of the . . . position." 29 C.F.R. § 825.123(a) (emphasis added). "That is, a person can be incapacitated despite being able to do some of her regular work." Branham v. Gannett Satellite Info. Network, Inc., 619 F.3d 563, 570 (6th Cir. 2010). In this case, it is clear from Dr. Sweeney's testimony that she knew that speaking with other employees was an essential function of LaMonaca's position as HR director, and that Dr. Sweeney was of the opinion that LaMonaca was unable to perform this essential function:

> Q. Was it your determination after the April 14th appointment . . . that [LaMonaca] had no business working?
>
> A. She had a hard time speaking in the room with me. I know that she was the HR manager at Tread. I just felt like that's a position where you have to talk to people and she was having a hard time speaking clearly, staying focused. She was extremely anxious and tearful.
>
> Q. So it was your determination that during this 30-day period, she was unable to work?
>
> A. Correct.

11

Trial Tr. Vol. I. at 107. Accordingly, Dr. Sweeney's testimony plainly supports the jury's finding that LaMonaca had a serious health condition that prevented her from performing the functions of her position at Tread.

Finally, the court notes that the mere fact that LaMonaca applied for other jobs during the period of leave prescribed by Dr. Sweeney did not render her incapable of establishing that she was incapacitated for purposes of 29 C.F.R. § 825.115, or that she was "unable to perform the functions of her position, as required by 29 U.S.C. § 2612(a)(1)(D). See Stekloff, 218 F.3d at 861-62 ("Upon consideration of the declared purposes of the FMLA and its legislative history, we hold that a demonstration than an employee is unable to work in his or her current job due to a serious health condition is enough to show that the employee is incapacitated, even if that job is the only one that the employee is unable to perform . . . . For the same reasons that we believe that the 'serious health condition' inquiry should focus on an employee's current job with her current employer, we believe that the inquiry into whether an employee is able to perform the essential functions of her job should focus on her ability to perform those functions in her current environment."); see also Hurlbert St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1296 (11th Cir. 2006) (rejecting the employer's claim that an employee could not have experienced an inability to work within the meaning of the FMLA regulations since he continued to perform similar duties for another employer).

In sum, viewing the evidence in the light most favorable to LaMonaca, the court finds that a reasonable jury could have found that LaMonaca was still employed at the time she requested FMLA leave, that she provided sufficient notice of her need for leave, that she suffered from a serious medical condition that precluded her from performing the essential functions of her position, and that Tread denied or interfered with the exercise of her right to take time off from

12

work.  Accordingly, Tread is not entitled to judgment as a matter of law on LaMonaca's interference claim.

> **B.**     **Retaliation Claim**

LaMonaca also claimed that Tread terminated her in retaliation for exercising, or attempting to exercise, her rights under the FMLA.  See 29 U.S.C. § 2615(a); see also 29 C.F.R. § 825.220(c) ("The [FMLA's] prohibition against interference prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights.")  In order to prevail on an FMLA retaliation claim, a plaintiff must prove (1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that the adverse employment action was causally connected to the protected activity.  Yashenko v. Harrah's N.C. Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006).

Viewing the record in the light most favorable to LaMonaca, the court concludes that there was a legally sufficient basis for the jury to find in favor of LaMonaca on the retaliation claim.  A reasonable jury could have found that LaMonaca engaged in protected activity when she requested FMLA leave; that Tread subsequently terminated her employment; and that Tread took the adverse employment action because of LaMonaca's protected activity.  While Tread continues to maintain that LaMonaca voluntarily resigned on April 11, 2014, and, thus, that she did not engage in protected activity or suffer an adverse employment action, the court is convinced that the jury's finding to the contrary is supported by a legally sufficient evidentiary basis.  Likewise, for the reasons stated during the hearing, the evidence presented by LaMonaca, when viewed in her favor, supports the jury's determination that Tread terminated her because she exercised, or attempted to exercise, her rights under the FMLA.  Accordingly, Tread is not entitled to judgment as a matter of law on LaMonaca's retaliation claim.

## II.    Tread's Motion for New Trial

Tread has alternatively moved for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure.   Under this rule, the trial court "must weigh the evidence and consider the credibility of the witnesses to determine whether the verdict was against the clear weight of the evidence or was based upon evidence that was false."  Knussman v. Maryland, 272 F.3d 625, 647 (4th Cir. 2001)).   "If the trial court weighs the evidence and determines that it is deficient to sustain a verdict, then the trial court can set aside the verdict and grant a new trial."  Id.

In moving for a new trial, Tread argues that the evidence presented at trial clearly demonstrated that LaMonaca resigned on April 11, 2014, before she requested medical leave, and that she was able to perform all of the essential functions of her position.   For the reasons stated during the hearing, however, the court is unable to agree.   While this court may have decided the issues differently if it had been the designated finder of fact, the court is unable to conclude that the jury's finding with respect to either issue was against the clear weight of the evidence or based on evidence that was false.   Accordingly, Tread's motion for a new trial will be denied.  See Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir. 1984) (noting that "a trial judge should not 'denigrate' the jury system by granting a new trial on grounds of insufficient evidence and substituting his own judgment of the facts and witness credibility, particularly when the subject matter of the trial is simple and easily comprehended by a lay jury) (quoting Lind v. Schenley Industries, Inc., 278 F.2d 79, 88-91 (3d Cir. 1960)).

## III.    LaMonaca's Motion for Liquidated Damages

Having concluded that Tread is not entitled to judgment as a matter of law or a new trial, the court must address LaMonaca's motion for liquidated damages.   For the following reasons,

14

the court will grant the motion and award LaMonaca liquidated damages in the amount of $54,468.89.

"The FMLA entitles a wronged employee to an additional award of liquidated damages equal to the sum of the amount awarded for damages and the interest on that amount." Dotson v. Pfizer, Inc., 558 F.3d 284, 302 (4th Cir. 2009) (citing 29 U.S.C. § 2617(a)(1)(A)(iii)). Such damages are normally "awarded automatically." Id. "If, however, the employer proves to the satisfaction of the court that the violation of [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation, the court, in its discretion, may choose not to award liquidated damages." Id. (citation and quotation marks omitted). An employer "has a plain and substantial burden to persuade the court that its failure was in good faith and that it would be unfair to impose liquidated damages." Id. (citation and quotation marks omitted). While the court has the discretion to deny an award of liquidated damages, such discretion should be exercised "consistently with the strong presumption under the statute in favor of doubling." Jackson v. City of Hot Springs, 751 F.3d 855, 866 (8th Cir. 2014) (citation and quotation marks omitted); see also Randolph v. PowerComm Constr., Inc., 309 F.R.D. 349, 365 (D. Md. 2015) (emphasizing that "[d]ouble damages are the norm, single damages the exception").

Based on the jury's verdict, the court is unable to find that Tread acted in good faith when it violated the FMLA. While Tread argues that Russell genuinely believed that LaMonaca resigned on April 11, 2014, before she requested FMLA leave, the jury rejected this argument when it found in favor of LaMonaca on her retaliation claim. In light of the jury's finding that Tread intentionally retaliated against her for exercising her rights under the FMLA, and given the strong presumption in favor of liquidated damages, the court concludes that liquidated damages

15

must be awarded in the instant case.  See Hite v. Vermeer Mfg. Co., 446 F.3d 858, 869 (8th Cir. 2006) ("Showing good faith when a jury has determined intentional retaliation is a very high bar to clear, if indeed it can be."); see also Arban v. West Publ'g Corp., 345 F.3d 390, 408 (6th Cir. 2003) (holding that the district court abused its discretion in denying liquidated damages where the court relied on the employer's nonretaliatory reason for its conduct, which the jury rejected by finding intentional retaliation).  Accordingly, the court will grant LaMonaca's motion for liquidated damages in the amount of $54,468.89.

### IV.    LaMonaca's Motion for Attorneys' Fees and Litigation Costs

In addition to liquidated damages, LaMonaca seeks to recover her attorneys' fees and litigation costs.  LaMonaca was represented by Paul Beers, a partner at the Roanoke law firm of Glenn Feldmann Darby & Goodlatte ("Glenn Feldmann"), and Emma Kozlowski, an associate at the firm.

### A.    Attorneys' Fees

An award of reasonable attorneys' fees and costs to a prevailing plaintiff is mandatory under the FMLA.  See 29 U.S.C. § 2617(a)(3).  When a statute authorizes an award of attorneys' fees, the United States Court of Appeals for the Fourth Circuit has adopted the lodestar method of determining reasonable fees.  Brodziak v. Runyon, 145 F.3d 194, 196 (4th Cir. 1998).  The lodestar figure carries a "strong presumption" that it "represents a reasonable attorney's fee." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013).

The lodestar figure is calculated by multiplying the number of hours expended by a reasonable rate.  Id.  The Fourth Circuit has identified several factors that courts may consider in determining this lodestar amount.  See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d

16

714, 717-19 (5th Cir. 1974)). These factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fee awards in similar cases. Id.

In this case, LaMonaca seeks an award of attorneys' fees in the amount of $259,542.00.[1] In response, Tread argues (1) that the hourly rates charged by LaMonaca's attorneys should be reduced to more reasonable rates; and (2) that the number of hours billed by the attorneys should be reduced to account for block billing practices; vague time entries; and duplicative, unreasonable, and unnecessary time expenditures.[2]

1. **Hourly Rates**

LaMonaca seeks compensation at the rate of $350.00 per hour for work performed by Beers. She seeks compensation at the hourly rate of $200.00 work performed by Kozlowski. In response, Tread argues that Beers' hourly rate should be reduced to $300.00 and that Kozlowski's hourly rate should be reduced to $150.00.

---

[1] LaMonaca initially sought a total award of $260,862.00. However, in response to Tread's brief in opposition to her motion, LaMonaca agreed that her attorneys' billing records should be reduced by 4.2 hours to account for clerical errors contained in certain time entries.

[2] The amount of fees requested by LaMonaca includes $2,112.00 for work performed by paralegals at Glenn Feldman. Tread does not challenge the number of hours billed for the paralegals' work or the hourly rate charged. Accordingly, the fees billed for the paralegal's work will be included in the total amount awarded to LaMonaca.

17

A party seeking a fee award must prove that the requested hourly rate is reasonable.  See McAfee, 738 F.3d at 91.  When determining a reasonable rate, the court should consider the prevailing market rate in the relevant community, as well as the background and experience of the individual attorneys involved.  See Missouri v. Jenkins, 491 U.S. 274, 285-86 (1989); Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987).  The prevailing market rate can be established through evidence of the attorneys' billing practices, comparison to fee awards in similar cases, and affidavits reciting fees of counsel from the relevant community with similar qualifications.  Spell, 824 F.2d at 1402.

After reviewing the affidavits submitted by the parties and fee awards in similar cases, the court finds that an hourly rate of $325.00 is reasonable for the work performed by Beers, and that an hourly rate of $175.00 is reasonable for the work performed by Kozlowski.  The court will apply these rates when calculating the fee award in this case.

## 2.    **Number of Hours Expended**

LaMonaca seeks attorneys' fees for nearly 900 hours billed by Beers and Kozlowski from May 1, 2014 through July 12, 2015, and for approximately 100 hours billed by Beers between July 13, 2015 and November 30, 2015.  To support her request, LaMonaca has submitted billing charts which list the timekeeper, a brief description of the work performed, the amount of time expended, and the date on which the work was performed.  Tread makes several objections to the number of hours claimed by LaMonaca.  The following objections will be sustained.

First, Tread argues that the attorneys' use of block billing from May 2014 through July 12, 2015 makes it difficult to accurately assess the amount of time spent on each task by the attorneys.  Block billing occurs when attorneys "lum[p] tasks together in time entries rather than making such entries task-by-task."  McAfee, 738 F.3d at 90.  Although block billing is not prohibited, its use

18

is "disfavored by federal courts." Lusk v. Virginia Panel Corp., 96 F. Supp. 3d 573, 582 (W.D. Va. 2015). When confronted with block billing or other forms of inadequate documentation, "courts often reduce the fee award by a fixed percentage, striking a balance between the lack of specificity block billing presents and the unfairness of denying an otherwise-properly-granted fee award altogether." Elderberry of Weber City, LLC v. Living Centers-Southeast, Inc., No. 6:12-CV-00052, 2014 U.S. Dist. LEXIS 110492, at *11 (W.D. Va. Aug. 11, 2014); see also Lusk, 96 F. Supp. 3d at 583 (reducing total fee award by a fixed percentage to account for counsel's use of block billing).

It is undisputed that LaMonaca's attorneys engaged in block billing on multiple occasions between May 1, 2014 and July 12, 2015. In an effort to remedy this deficiency, counsel went back after trial and attempted to add good faith estimates of the breakdown of hours expended on discrete tasks during a single day. As other courts have recognized, however, "it is nigh onto impossible to reconstruct old billing entries accurately." McAfee, 906 F. Supp. 2d 484, 500 (E.D. Va. 2012), vacated in part on other grounds, 738 F.3d 81 (4th Cir. 2013). Estimates of the sort made by counsel, while attempted in good faith, "are actually little more than guesses when made for entries logged long in the past." Id. Accordingly, to account for this inadequate documentation, the court finds it appropriate to reduce the amount of fees awarded for work performed from May 1, 2014 to July 12, 2015.

In addition to block billing, another disfavored billing practice is the use of excessively vague time descriptions. Such descriptions "inhibit the court's reasonableness review" and also "justify a percentage reduction in the fee awarded." Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., No. 2015 U.S. Dist. LEXIS 95355, at * (D. S.C. July 21, 2015) (citing cases).

The court agrees with Tread that a large portion of plaintiff's counsel's time entries from May 1, 2014 through July 12, 2015 are excessively vague and inadequately describe the tasks performed by counsel. Examples of such entries include entries for "research," "document review," "work on discovery," and "trial preparation." Because these and other vague entries preclude the court and Tread from making an adequate assessment of the reasonableness of the time expended by LaMonaca's attorneys, the court finds it appropriate to further reduce the amount of attorneys' fees awarded for work performed from May 1, 2014 to July 12, 2015.

The court will also sustain Tread's objection to LaMonaca's requests for fees associated with the performance of certain tasks that were unnecessarily performed by her attorneys. For instance, LaMonaca's counsel billed for several hours of time spent researching and drafting a motion to quash subpoenas duces tecum, which were issued to her cell phone provider by Tread. The motion was improperly filed in this district, rather than in the district in which compliance with the subpoenas was required. See Fed. R. Civ. P. 45(d)(3). Counsel ultimately elected to withdraw the motion and spent several additional hours drafting a motion to that effect. Under these circumstances, the court finds it unreasonable to expect Tread to pay the fees associated with researching, drafting, and withdrawing the motion to quash.

Similarly, the court notes that LaMonaca's counsel billed over $5,000.00 for time spent responding to Tread's motion to compel and related motion for status conference, which were filed after LaMonaca objected to the production of certain documents requested in discovery. Tread eventually withdrew the motion to compel after LaMonaca agreed to provide the requested documents. Because Tread's motions may not have been necessary but for LaMonaca's initial challenges to the production of the requested documents, the court finds it inappropriate to award the fees incurred in responding to Tread's motions.

20

Tread also cites to a number of instances in which LaMonaca seeks to be awarded fees for drafting documents that were never produced or filed during the course of the litigation. For instance, LaMonaca's counsel billed for drafting a privilege log, even though it is undisputed that a privilege log was never produced in the instant case. Similarly, LaMonaca's counsel spent 5.2 hours, at a cost of $1,130.00, drafting a motion to compel that was never filed. The court agrees with Tread that it should not be responsible for paying for work that was ultimately found to be unnecessary to the prosecution of her case.

Finally, the court will sustain Tread's objection to an award of fees for clerical tasks performed by Kozlowski. "[C]ourts in this circuit have determined that because purely clerical tasks are ordinarily part of a law office's overhead, (which is covered in the hourly rate), they should not be compensated for at all." Two Men & a Truck/Int'l, Inc. v. A Mover, Inc., No. 2:14CV248, 2015 U.S. Dist. LEXIS 45473, at *19 (E.D. Va. Apr. 7, 2015) (citing cases); see also Jenkins, 491 U.S. at 288 n. 10 (noting that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"). Examples of clerical tasks include: filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings, organizing documents, creating notebooks or files, assembling binders, emailing documents, and making logistical telephone calls. Two Men & a Truck/Int'l, Inc., 2015 U.S. Dist. LEXIS 45473, at *19 (citing cases).

Here, the billing records submitted by LaMonaca include a number of entries for clerical tasks performed by Kozlowski. Such tasks include preparing notebooks, organizing files, "pulling" documents, scheduling depositions, and making other telephone calls. These types of clerical tasks, billed at the hourly rate of an associate, justify a further reduction in the fee awarded to LaMonaca.

21

For the reasons stated, the court is unable to find that each and every hour billed by LaMonaca's attorneys from May 1, 2014 to July 12, 2015 was reasonable.[3] In such circumstances, "courts must exercise sound judgment based on knowledge of the case and litigation experience to reduce the number of hours by an appropriate percentage." In re Outsidewall Tire Litig., 52 F. Supp. 3d 777, 789 (E.D. Va. 2014) (collecting cases). Based on the court's review of the records submitted by LaMonaca and its knowledge of the case and others like it, the court finds it appropriate to reduce the number of hours billed by Beers from May 1, 2014 to July 12, 2015 by 15 percent, and the number of hours billed by Kozlowski during the same time period by 20 percent.[4]

### 3.   Total Fee Award

For the reasons set forth above, the court will reduce the total number of hours billed by Beers to 348.76, and it will reduce the total number of hours billed by Kozlowski to 480.64. These hours and those expended by the firm's paralegals, when combined with the applicable hourly rates, produce a lodestar of $199,571.00. Given the degree of success achieved by LaMonaca, the court finds that no further adjustment of the lodestar is warranted in the instant case. Accordingly, the court will award LaMonaca attorneys' fees in the amount of $199,571.00.

### B.   Litigation Costs

LaMonaca also seeks to recover litigation costs in the amount of $11,352.76. Tread has filed a number of objections to the requested costs. The following objections will be sustained.

---

[3] Beers' supplemental billing records from July 13, 2015 to November 30, 2015 do not suffer from the deficiencies outlined above. Accordingly, there will be no reduction in the hours billed during that time period.

[4] To the extent Tread also argues that LaMonaca's counsel spent an excessive amount of time answering discovery requests, researching and drafting LaMonaca's brief in opposition to Tread's summary judgment motion, and preparing for trial, Tread's objection is overruled, as is Tread's objection to the use of two attorneys to prosecute LaMonaca's claims.

The court will sustain Tread's objection to the consultation fees paid to Dr. Nina Sweeney and Dr. Maurice Fisher. LaMonaca seeks to recover $900.00 in consultation and trial appearance fees paid to Dr. Sweeney. Prior to trial, the court ruled that Dr. Sweeney could only testify as a fact witness. Consequently, the court agrees with Tread that LaMonaca is not entitled to recover the $900.00 paid for Dr. Sweeney's time. See Alexander v. Watson, 128 F.2d 627, 630 (4th Cir. 1942) ("Except in the case of expert witnesses, we know of no authority which would justify an allowance to witnesses in excess of ordinary witness fees, however valuable their testimony may have been to the parties calling them to testify."). Similarly, because Dr. Fisher was not utilized as an expert in this case, the court declines to award the $110.00 consultation fee charged for his time.

The court will also sustain Tread's objection to the witness and mileage fees paid to Dr. Fisher and Tonya Gilson. Since LaMonaca ultimately elected not to call these individuals as witnesses at trial, the court agrees with Tread that it should not be taxed the costs associated with their appearances. To the extent Tread also seeks to recover mileage fees paid to Caroline Stainback on three occasions, Tread's objection is sustained. Neither Tread, nor the court, is aware of who Stainback is. Accordingly, Tread will not be required to pay Stainback's mileage fees.

To the extent Tread objects to other costs, such as those billed for computerized legal research, on the basis that such costs are not recoverable under 28 U.S.C. § 1920, Tread's objections are overruled. "The recovery of costs is not limited to those under 28 U.S.C. § 1920 where attorneys' fees are expressly authorized by statute." Redd v. Empowerment Clinical & Consulting Servs., LLC, 2015 U.S. Dist. LEXIS 87254, at *4 n.2 (E.D. Va. July 6, 2015)

23

(awarding fees and costs in a case under the FMLA and Title VII of the Civil Rights Act of 1964). As relevant here, the FMLA specifically provides that the court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee [and] other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). In cases involving similar statutory provisions, courts have held that "charges for . . . online research may properly be included in a fee award." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004); see also N.C. Right to Life PAC v. Leake, 939 F. Supp. 2d 526, 530 (E.D.N.C. 2013) (finding, based on existing decisions in the Fourth Circuit involving fee-shifting provisions, that the prevailing plaintiffs in an action under 42 U.S.C. § 1983 were entitled to the full amount of computerized research costs claimed) (E.D.N.C. 2013); Wolfe v. Green, No. 2:08-01023, 2010 U.S. Dist. LEXIS 102623, at *42 (S.D. W.Va. Sept. 24, 2010) (noting that "other circuits generally permit the recovery of expenses for online legal research through fee-shifting statutes") (collecting cases). Accordingly, Tread's objection in this regard will be overruled.

In accordance with the foregoing rulings, the court will award LaMonaca litigation costs in the amount of $10,188.69. The court finds such costs to be reasonable and recoverable under the FMLA. See, e.g., Lusk, 96 F. Supp. 3d at 583 (awarding costs in the amount of $9,602.04 to a plaintiff who prevailed on a single FMLA claim).

## Conclusion

For the reasons stated, Tread's motion for judgment as a matter of law or, in the alternative, a new trial will be denied; LaMonaca's request for liquidated damages will be granted; and LaMonaca's motion for attorneys' fees and costs will be granted in part and denied in part.

LaMonaca will be awarded liquidated damages in the amount of $54,468.89, and attorneys' fees and litigation costs in the amount of $209,759.69.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 21st day of January, 2016.

_____
Chief United States District Judge

Case 7:14-cv-00249-GEC   Document 124   Filed 01/21/16   Page 25 of 25   Pageid#: 3374